UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENA MARIE WILLIS,  ) CASE NO. C08-1198-RSM
                    )
  Plaintiff,        )
                    )
  v.                ) REPORT AND RECOMMENDATION
                    ) RE: SOCIAL SECURITY DISABILITY
MICHAEL J. ASTRUE, Commissioner ) APPEAL
of Social Security, )
                    )
  Defendant.        )
_____)

Plaintiff Dena Marie Willis proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1965.[1] She has a high school education and previously

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

worked as a customer service representative, lease agent, manager of an apartment house, and cashier. (AR 61, 71-75, 559.)

Plaintiff filed applications for DI and SSI benefits in February 2005, alleging disability due to a "[b]ack condition" and "mental complications" beginning August 5, 2004. (AR 54-58, 60, 484-87.) She is insured for DI benefits through June 2008. (AR 15, 17.) Plaintiff's application was denied at the initial level and on reconsideration, and she timely requested a hearing.

On December 17, 2007, ALJ Mary Gallagher Dilley held a hearing, taking testimony from plaintiff, her mother Barbara Walbaum, medical expert Dr. Alan Bostwick, and vocational expert Charles Weiss. (AR 500-62.) On March 10, 2008, the ALJ issued a decision finding plaintiff not disabled. (AR 15-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 9, 2008 (AR 6-9), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be

---

official policy on privacy adopted by the Judicial Conference of the United States.

determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's depression, personality disorder, anxiety reaction, and low back strain severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium-level exertional work, and work involving simple, routine tasks and occasional contact with the public and co-workers. With that assessment, the ALJ found plaintiff unable to perform her past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a cleaner II or janitor.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred at step five in relation to the vocational expert (VE) testimony and failed in the assessment of her mental impairments. She requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons described below, the Court agrees with the Commissioner that this matter should be affirmed.

### Step Five

Plaintiff argues that the ALJ failed to meet her burden at step five. She contends that the ALJ erroneously relied on VE testimony conflicting with the O-NET, the successor to the Dictionary of Occupational Titles (DOT), and failed to adhere to the requirements of Security Ruling (SSR) 00-4p.

The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the

ALJ must definitively explain this deviation.") "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted).

The VE in this case identified two jobs plaintiff would be capable of performing – cleaner II and janitor. (AR 25, 560.) He identified these positions in response to a hypothetical from the ALJ limiting plaintiff to simple, routine work, involving occasional contact with the public and coworkers. (AR 559-60.) The VE testified that his testimony was consistent with the DOT. (AR 561.)

Plaintiff describes the ALJ as finding her limited to "infrequent" contact with co-workers and the public. She points to a job description contained in O-NET indicating that janitors and cleaners must communicate with supervisors, peers, subordinates, and/or the public. (Dkt. 14, Attach. A.) Plaintiff reads the description as requiring frequent contact with co-workers and the public. She asserts that the VE did not explain this perceived inconsistency between his testimony and the DOT/O-NET and argues that the ALJ failed to comply with SSR 00-4p by failing to elicit a reasonable explanation for the inconsistency. Plaintiff points to evidence in the record supporting her limitations in interacting with others. (*See* AR 159 (State agency consultant Dr. Stephen Goldberg stated that "there should be no public contact."); AR 236 (consulting psychiatrist Dr. Paul Michels opined: "Interactions with others may pose one of the greatest difficulties for her given her pattern of maladaptive coping mechanisms and significant irritability."); AR 512-37 (plaintiff's testimony).) She also asserts a daily reduced level of concentration due to her migraine headaches, anxiety, depression, and

personality disorder (*see* AR 302), and maintains that the jobs identified are not consistent with a twenty percent loss of concentration daily. However, as argued by the Commissioner, plaintiff fails to identify error at step five.

First, plaintiff provides no basis for relying on a perceived conflict between the O-NET and the VE testimony. Social Security regulations "recognize vocational experts and several published sources other than the DOT as authoritative." *Johnson*, 60 F.3d at 1435-36 (citing 20 C.F.R. § 404.1566(d) (at step five, the Social Security Administration takes administrative notice of job data from, for example, the DOT, census publications, State-prepared Occupational Analyses, and the Occupational Outlook Handbook prepared by the Bureau of Labor Statistics).) However, SSR 00-4p and cases decided subsequent to that ruling specifically require the resolution of conflicts between the DOT and a VE's testimony. SSR 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."); *Massachi*, 486 F.3d at 1152-54; *Pinto*, 249 F.3d at 847. Plaintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement. *See generally* www.oalj.dol.gov/LIBDOT.HTM ("The DOT has been replaced by the O*Net[:] The DOT was created by the Employment and Training Administration, and was last updated in 1991. It is included on the Office of Administrative Law Judges (OALJ) web site because it is a standard reference in several types of cases adjudicated by the OALJ, especially in older labor-related immigration cases.") Here, the ALJ satisfied her responsibility in inquiring into consistency with the DOT and plaintiff does not demonstrate any conflict between the VE's testimony and the DOT. *See* DOT 919.687-014 (cleaner II; any industry) and DOT

381.687-018 (cleaner, industrial; any industry).

Second, even if the ALJ was required to identify and resolve conflicts between the VE's testimony and the O-NET, plaintiff fails to demonstrate any such conflict exists. The ALJ limited plaintiff to occasional contact with the public and coworkers, rather than infrequent contact as suggested by plaintiff. While the O-NET description of janitor and cleaner positions does indicate a need to communicate with others, there is nothing reflecting that such communication need be more than occasional. (*See* Dkt. 14, Attach. A.)

Finally, plaintiff does not demonstrate any conflict in relation to concentration. The ALJ proffered a second hypothetical to the VE including a limitation of a twenty percent loss of concentration throughout the work day. (AR 560.) However, she did not include any such limitation in plaintiff's RFC and adopted the VE's testimony as it related to the first hypothetical, which corresponded with the RFC assessed in the decision. (AR 21, 559-60.) For this reason, and for the reasons described above, plaintiff fails to demonstrate any error in the ALJ's decision at step five.

### Mental Impairments

Plaintiff asserts that the ALJ failed to properly evaluate her mental impairments and the opinions of her medical providers as to those impairments. She focuses specifically on the opinion of consulting psychiatrist Dr. Michels that "[i]nteractions with others may pose one of the greatest difficulties for [plaintiff] given her pattern of maladaptive coping mechanisms and significant irritability[]" (AR 236), and records from Seattle Mental Health, which she maintains support an inability to socialize or concentrate and reflect that her depression, anxiety, and/or personality disorder met the criteria for listed impairments (*see* AR 302 (April

5, 2005 initial assessment form from Seattle Mental Health reflecting diagnoses of: "Major Depression, recurrent, moderate as experienced by: depressed mood, irritability, anxiety, isolative behaviors, [decreased] energy, [decreased] sleep, panic attacks, significant impairment in social & occupational functioning.")) She elsewhere in her briefing notes that State agency consultant Dr. Goldberg opined that "there should be no public contact." (AR 159.)

Plaintiff challenges the ALJ's interpretation of Dr. Bostwick's testimony. She notes that, upon questioning by her attorney as to whether her social functioning might be more severe, Dr. Bostwick testified: "Well, it's possible. I would say that if she if she's dealing directly with the public. In a stressful situation. That, that may be more severe." (AR 554.) She takes issue with Dr. Bostwick's opinion that her symptoms "should be well controlled[]" if she maintained her treatment (AR 556), calling it "speculative at best." (Dkt. 14 at 11.) Plaintiff contends that, while describing marked limitations, Dr. Bostwick inconsistently labeled those limitations as moderate. (*See* AR 552-53.)

Plaintiff also makes a number of general observations as to the proper consideration of mental impairments. *See*, *e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).) (*See also* Dkt. 14 at 13-14.) She further contends that the ALJ failed to evaluate the combined effect of her impairments, including her migraine headaches, fatigue, aches and

pains, and depression. *See Beecher v. Heckler*, 756 F.2d 693, 694 (1985) ("'A claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects.'") (quoting *Dressel v. Califano*, 558 F.2d 504, 508 (8th Cir. 1977)); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.") However, again, none of plaintiff's arguments withstand scrutiny.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). However, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by all other evidence in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041(9th Cir.1995) (quoting

*Magallanes*, 881 F.2d at 752 (emphasis in original)).

While examining physician Dr. Michels opined that "[i]nteractions with others may pose one of the greatest difficulties for [plaintiff] given her pattern of maladaptive coping mechanisms and significant irritability[]" (AR 236), he did not assess any specific associated limitation. Moreover, Dr. Michels juxtaposed his observation as to plaintiff's greater difficulty in interactions with his findings that plaintiff's concentration and her pace and persistence appeared only mildly impaired and that she may have frequent difficulties in timely and consistently completing tasks. (AR 235-36.) Contrary to plaintiff's contention that the ALJ failed to accord proper weight to Dr. Michels' opinions, it is apparent that the ALJ took Dr. Michels' opinions into account in finding plaintiff had moderate difficulties in social functioning "as evidenced by irritability at times." (AR 20.)

The ALJ also considered reviewing physician Dr. Goldberg's assessment as to plaintiff's ability to interact with others. Dr. Goldberg opined, in June 2005: "Although she has worked in customer service in the past, *at this time* there should be no public contact." (AR 159 (emphasis added).) The ALJ noted Dr. Goldberg's finding, "on initial review," but found Dr. Bostwick's later testimony, limiting plaintiff to occasional contact with the public and co-workers, "consistent with the record as a whole." (AR 24.) Plaintiff fails to demonstrate that the ALJ's decision to favor the opinion of the later reviewing physician was not supported by substantial evidence.

Nor does plaintiff demonstrate any error in the ALJ's interpretation of Dr. Bostwick's testimony. Dr. Bostwick followed up his statement as to possible increased severity in plaintiff's social functioning by stating: "But on the other hand, I'm also factoring in, her

01 | presentation to her treaters and her evaluators of record. And she didn't have a marked
02 | limitation presenting socially and interpersonally in any of those records." (AR 554.) Also,
03 | as noted by the ALJ (AR 18, 23-24), the record contained other support for Dr. Bostwick's
04 | opinion that plaintiff's symptoms were controlled when she took her medication and otherwise
05 | complied with her treatment. (*See*, *e.g.*, AR 173 (State agency consultant Dr. Gerald Peterson,
06 | in November 2005, found plaintiff's condition non-severe with the aid of medication).)
07 | Plaintiff does not support the contention that Dr. Bostwick inconsistently labeled marked
08 | limitations as moderate. Indeed, following his description of plaintiff's limitations, Dr.
09 | Bostwick opined that a limitation to simple, routine work with occasional public and co-worker
10 | contact "would be an ideal work environment and routine[]" for plaintiff. (AR 552-53.)

11 | Plaintiff's assertions as to Seattle Mental Health are similarly unavailing. Plaintiff
12 | contends that these records indicate she meets the "B" criteria for listings 12.04 (affective
13 | disorders), 12.06 (anxiety-related disorders), and/or perhaps 12.08 (personality disorders).
14 | For each of these conditions, satisfaction of the B criteria requires a showing of at least two of
15 | the following: marked restriction of daily activities; marked difficulties in maintaining social
16 | functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated
17 | episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, App.
18 | 1, §§ 12.04(B), 12.06 (B), 12.08(B). Beyond a general reference to the records from Seattle
19 | Mental Health, plaintiff points only to a document reflecting a diagnosis of major depression
20 | causing "significant impairment in social & occupational functioning." (AR 302.) This
21 | document does not reflect satisfaction of the B criteria. *See Key v. Heckler*, 754 F.2d 1545,
22 | 1549-50 (9th Cir. 1985) (emphasis in original) ("The mere diagnosis of an impairment listed in

Appendix 1 is not sufficient to sustain a finding of disability. . . . [An impairment] must also have the *findings* shown in the Listing of that impairment.")  Moreover, none of the remaining records from Seattle Mental Health reflect an opinion as to listing level severity.  (*See* AR 257-360.)  The ALJ also provided reasons for giving little weight to the May 2005 opinion of a Seattle Mental Health care provider who opined in May 2005 that plaintiff was unable to work. (AR 24 (stating that, although opining that plaintiff needed ongoing mental health treatment, the care provider "did not otherwise describe [plaintiff's] symptoms or functional limitations, and noting that, after this report, plaintiff repeatedly reported improvement with treatment) and AR 226-28 (Seattle Mental Health May 2005 report).)  Plaintiff does not specifically allege, nor does the Court find, any error in the ALJ's reasoning.

Finally, plaintiff does not demonstrate that the ALJ failed to consider the combined effect of her impairments.  She points specifically to migraine headaches, fatigue, aches and pains, and depression, but does not support her argument with any references to the record.  A review of the ALJ's decision reflects that she considered a number of impairments at step two, finding, for example, no evidence of a medically determinable impairment of the neck or shoulders and insufficient evidence to support a severe headache disorder (AR 18-19), as well as a variety of different issues, including headaches, pain, and depression, in assessing plaintiff's credibility (AR 21-24).  The ALJ indicates in her decision that she considered plaintiff's impairments alone and in combination (AR 20, 21) and plaintiff does not support her contention to the contrary.  For this reason, and for the reasons described above, plaintiff fails to demonstrate any error in the ALJ's consideration of her mental impairments.

/ / /

## **CONCLUSION**

For the reasons set forth above, this matter should be affirmed. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of March, 2009.

s/ Mary Alice Theiler
United States Magistrate Judge